GUY C. BARTON, PLAINTIFF IN ERROR, V. EMIL E. ERICKSON ET AL., DEFENDANT IN ERROR.

1. Jurors: COMPETENCY. A person who belongs to a religious denomination, as the Lutheran, is not thereby precluded from sitting as a juror in a case where a church organization of the same denomination, of which he is not a member, is a party.

2. Ejectment: TITLE. In ejectment, where both parties claim under the same third person, it is sufficient *prima facie* to prove the derivation of title from him, without proving his title.

ERROR to the district court for Lincoln county. Tried below before GASLIN, J.

*Hinman & Neville*, for plaintiff in error, cited: Tyler on Ejectment, 75. 2 Washburn, 194–6. 2 Story's Equity, 478. *Cleage v. Hydin*, 6 Heisk, 73. *Morton v. Green*, 2 Neb., 45.

*George E. Pritchett*, for defendant in error, cited: *Hightown v. Williams*, 38 Ga., 597. *Dae v. Johnson*, 3 Ill., 522.

*Conger v. Converse,* 9 Ia., 554. *Brooks v. Chaplin,* 2 Vt., 381.

MAXWELL, J.

This is an action of ejectment brought by the defendants in error as trustees against the plaintiff to recover the possession of lots 7 and 8 in block 115 in the town of North Platte. On the trial of the cause in the court below a verdict was returned in favor of the defendants, upon which judgment was rendered. The plaintiff brings the cause into this court by petition in error.

While the jury were being impaneled, Alfred Samuelson, August Johnson, and Theodore Lowe, called as jurors, while being examined on the *voir dire,* stated in substance that they were members of the Lutheran church, and were thereupon challenged by the attorneys for the plaintiff in error as not being unbiased persons. The court overruled the challenge, and this is assigned for error.

None of the persons thus challenged appear to have belonged to the organization at North Platte. But one of them was asked that question, and he answered that he lived at a considerable distance from the town, and had nothing to do with the organization there—in other words, the jurors challenged were members of the denomination known as Lutheran, but were not members of this particular organization. An elector of a county or city is competent to sit as a juror in any case brought against the county or city, his interest being considered too remote to affect his judgment. This being so, why should a juror, otherwise acceptable, be rejected simply because he is a member of the same denomination as one of the parties to the suit? No fair-minded person would permit such a consideration to affect his judgment in the slightest degree. The challenges were properly overruled.

The defendants in error claim title under the following deed:

"This indenture made this seventh day of December, A.D. 1868, between the Union Pacific Railroad Company, by its agent and trustee, of the first part, and H. W. Kuhns, pastor Lutheran Church of Omaha, of the county of Douglas and state of Nebraska, of the second part.

"Witnesseth: That in consideration of the sum of one dollar in hand paid by the said H. W. Kuhns, the receipt whereof is hereby acknowledged, the said party of the first part has quit-claimed, remised, and released, and does hereby quit-claim, remise, and release unto the said party of the second part all their right, title, and interest in and to the following described premises, situated in the county of Lincoln and state of Nebraska, and described as follows, to-wit: Lots No. seven and eight (7, 8,) in block No. one hundred and fifteen (115) town of North Platte. *Donated in trust for use of the Lutheran Church*, with all and singular the hereditaments and appurtenances thereunto belonging, to have and to hold the above described premises to the said party of the second part and to their heirs and assigns forever.

"In witness whereof the said party of the first part has, through its agent and trustee, as aforesaid, executed and delivered this instrument the day and year above written.

"GRENVILLE M. DODGE,
"*Agent and Trustee.*

"In presence of
"J. E. HOUSE.

"STATE OF NEBRASKA, }
"COUNTY OF DOUGLAS, }

"On this seventh day of December, A.D. 1868, before me, notary public within and for said county, personally appeared the above named Grenville M. Dodge, agent and trustee of the Union Pacific Railroad Company, to me known to be the identical person who executed the foregoing instrument, and acknowledged the same to be his vol-

untary act and deed and the voluntary act and deed of the
Union Pacific Railroad Company.

"Oscar F. Davis,

"*Notary Public.*"

They also introduced proof tending to show the organi-
zation of the society at North Platte, of which the defend-
ants were trustees, and a deed from Kuhns to them as such
trustees for the lots in question. There was other testi-
mony in the case, to which it is unnecessary to refer.

The plaintiff in error claims to derive title to the lots in
question from the Union Pacific Railroad as follows: In
the year 1868, one Charles E. Buchanan was station agent
at North Platte, and appears to have acted as land agent
also. This man testifies that the lots in question were
given to the school district upon condition that it would
build thereon, which it did. That is, that the witness set
apart those lots for school purposes. He also states that a
deed for the same was made. In this he is evidently mis-
taken, as no such deed was offered in evidence. The
powers of this agent are stated by J. E. House, his imme-
diate superior, as follows:

Q. Any contracts that these station agents made had to
be afterwards ratified by you or General Dodge?

A. Yes.

Q. Describe the manner in which a station agent would
make a contract with a man, sell him a lot in North Platte
or any other towns on the road?

A. They were furnished a price list, a map of the town
showing the lots, and were furnished application slips upon
which the numbers of the lots and prices were all in blank;
they were also furnished contracts. The contracts were
made in duplicate, and sent to the office with the first in-
stallment, whatever it was, for the contracts to be ratified
and returned for signatures.

Q. Was the contract sent in before the application
slips?

A.    They all came together.

Q.   `Then if the proposed contract was satisfactory?

A.    It was signed by the parties at Omaha, and returned back again to the purchaser; both of the contracts were signed by the purchaser, then the duplicate copy was sent to the purchaser and the original was kept in the office.

Q.    Then these station agents had no authority to make any verbal agreements with reference to the sale of lands at all?

A.    No.

A log school building was erected on the lots in question in 1868, and school seems to have been taught therein until 1874, when, the district having erected a new school-house upon other lots, the school property on lots seven and eight was sold at public auction to J. H. McConnell for M. C. Keith, for the sum of $611. Keith, several years afterwards, conveyed to the plaintiff in error.

There is a conflict in the testimony as to what was offered for sale at the time the school property on lots seven and eight was sold, but the clear weight of the testimony shows that nothing was offered but the buildings, and that the lots without the buildings were worth about $1,000. After the completion of the sale two of the school trustees made a deed to McConnell—Street, the other member, refusing to join them.

The deed is as follows:

"Know all men by these presents: That Guy C. Barton, Joseph Mackle, and C. H. Street, school board of District No. 1 of the county of Lincoln and state of Nebraska, for the consideration of $611, hereby quit-claim to Joseph H. McConnell, of the county of Lincoln and state of Nebraska, to-wit: All of our right to lots seven and eight in block one hundred and fifteen (115), in the town of North Platte, as platted and recorded in the clerk's office of said county, with the erections thereon, possession of the

enclosure of the same to be given on or before the 1st day of May, 1874.

"In witness whereof we have set our hands this 9th day of February, 1874.

"JOSEPH MACKLE,

"*Director School Dist. No. one (1).*

"GUY C. BARTON,

"*Moderator School Dist. No. one.*"

"In presence of

"JAMES BELTON.

"STATE OF NEBRASKA, }
  "LINCOLN COUNTY. }

"Before me, the undersigned, a clerk of the district court in and for said county, personally appeared Joseph Mackle and Guy C. Barton, who are personally known to me to be the identical persons whose names are affixed to the foregoing deed as grantors, and acknowledged the same to be their voluntary act and deed.

"Given under my hand and official seal this 9th day of February, 1874.

"JAMES BELTON,

"*Clerk.*"

The proof fails to show that the school district claimed the title to the lots in controversy, or that it held adversely, and as the plaintiff in error has not been in possession under the deed from the school district for ten years, the validity of his title must depend upon the alleged conveyance from Buchanan. This, in our opinion, wholly fails.

It is very strenuously insisted that the defendants in error must fail in the action because they did not introduce the patent from the government of the United States to the Union Pacific Railroad for the lots in question. The rule seems to be well settled that a party is estopped from denying a title under which he claims to derive his right to the premises. Where both parties claim title from the

same grantor, it is sufficient *prima facie* to prove deriva-tion of title from him without proving his title.    2 Green-leaf Ev., sec. 307.    *Hart's Lessee v. Johnson*, 6 Ohio, 89. *Conger v. Converse*, 9 Iowa, 554.    It was unnecessary therefore to introduce the patent from the United States for the lots in question.

It is evident that justice has been done and that there is no error in the record.    The judgment must be affirmed.

JUDGMENT AFFIRMED.