*66 • 6 • 8*

OMAHA REAL ESTATE & TRUST COMPANY v.
JOSEPH S. KRAGSCOW.

OMAHA REAL ESTATE & TRUST COMPANY v.
SARAH J. SHAW ET AL.

OMAHA REAL ESTATE & TRUST COMPANY v.
JOHN W. RODEFER ET AL.

OMAHA REAL ESTATE & TRUST COMPANY v.
CHARLES E. REITER.

FILED MARCH 18, 1896.   NOS. 6377, 6378, 6379, 6380.

1. **Ejectment:** EVIDENCE.  A plaintiff, in an action of ejectment, must recover on the strength of his own title or right to the property and cannot rely upon the weakness or invalidity of the defendant's title or right.

2. ———: ———.  The plaintiff, to recover in ejectment, must possess and prove a legal title.

3. **Conflicting Statutes:** CONSTRUCTION.   Where there exist two statutes between which there is a direct and irreconcilable conflict, the later in point of time will be upheld and prevail.

4. ———: ———.  Where there are two sections of a statute on the same general subject and enacted at the same time, and one section is afterwards amended so that it directly conflicts with the other, the amended section, being the latest expression of the law-maker on the subject, will prevail and the other be repealed by implication when not repealed in express terms.

5. ———: ———.   Section 5 of an act entitled "Of real estate and the alienation thereof by deed," passed January 26, 1856 (Session Laws, p. 80, ch. 31), as amended February 13, 1864 (Session Laws, p. 58, ch. 12), was in direct and irreconcilable conflict with the provisions of section 44

of chapter 31 of the same statute, passed at the same time, and, consequently, operated its repeal by implication.

6. ———: ———. Where two sections or portions of the same statute, passed at the same time, are inconsistent with and repugnant to each other, so much so that both cannot be enforced, the last section, or last words, will be allowed to prevail and the section or words in conflict therewith held to be repealed.

7. ———: ———. Sections 5 and 41 of chapter 43, Revised Statutes of 1866, entitled "Real Estate," were enacted at the same time, as parts of the same statute, and being in some of their provisions so repugnant that both could not be executed, inasmuch as they conflicted, the last section—41—prevailed and the other was repealed.

8. Evidence: DEEDS: NAMES. The title to real estate appeared from the record to be in Joel S. Smith. A deed which purported to convey such real estate and which, in its recitals and also in the acknowledgment designated the grantor as "Joel S. Smith," but which was signed "John S. Smith," *held* not competent evidence to prove a conveyance of the title of Joel S. Smith in the absence of other proof establishing that the person who signed the deed, John S. Smith, and Joel S. Smith were one and the same person.

9. Trial: RIGHT TO WITHDRAW REST: REVIEW. The granting or overruling of an application by a party to a suit who has rested his case, to withdraw the rest and offer or introduce further testimony, is a matter within the discretion of the trial judge, and where such an application has been allowed for the purpose of affording a party an opportunity to offer or introduce testimony on certain subjects specified in the motion and allowance, and the party seeks to extend the privilege accorded, further so as to include other and entirely different subjects, it is within the discretion of the trial court to grant or refuse such extension, and unless an abuse of discretion appears in a refusal so to do, it will not be error or cause for a reversal of the judgment.

10. Acknowledgments. The rule announced in the first paragraph of the syllabus in the case of *Hoadley v. Stephens*, 4 Neb., 431, to the extent it relates to the acknowledgment of deeds in another state than this, before a commissioner of deeds for this state, overruled.

42

ERROR from the district court of Douglas county.   Tried below before SCOTT, J.

The opinion contains a statement of the case,

*George W. Covell,* for plaintiff in error:

The provisions relating to the acknowledgment of deeds are made for the protection and security of creditors and purchasers, but so far as the grantor is concerned, the title vested in him passes by the deed to the grantee as completely as it would if the conveyance had been acknowledged and recorded. (*Hastings v. Vaughn,* 5 Cal., 315; *Stewart v. Mathews,* 19 Fla., 752; *Gibbs v. Swift,* 12 Cush. [Mass.], 393; *Raines v. Walker,* 77 Va., 92; *Strong v. Smith,* 3 McLean [U. S.], 362; *Harrison v. McWhirter,* 12 Neb., 152; *Goodenough v. Warren,* 5 Sawyer [U. S.], 494; *Brown v. Manter,* 22 N. H., 468; *Stevenson v. Cloud,* 5 Blackf. [Ind.], 92; *Sicard v. Davis,* 6 Pet. [U. S.], 124; *Simpson v. Mundce,* 3 Kan., 172; *Hill v. Samuel,* 31 Miss., 307; *McMahon v. McGraw,* 26 Wis., 614; *Jackson v. Allen,* 30 Ark., 110.)

The want of the acknowledgment, or of the proof which may authorize the admission of the deed to record, does not invalidate the deed as between the grantor and grantee; and it is good as to all persons who are charged with such notice.   The acknowledgment and recording of the deed are provisions which the law makes for the security of creditors and purchasers.   They are not essential to the validity of the deed as to the grantor. (*Blain v. Stewart,* 2 Ia., 378; *Ricks v. Reed,* 19 Cal., 551; *Dole v. Thurlow,* 12 Met. [Mass.], 164; *Hepburn v. Dubois,* 12 Pet. [U. S.], 375; *Moore v. Thomas,* 1 Ore., 201; *Musgrove v. Bouser,* 5 Ore., 313.)

The certificate of acknowledgment is not essential to the validity of the deed, which is operative, without acknowledgment between the parties. The certificate is simply evidence of the execution of the deed supplying the place of direct proof, and, like all other evidence, should receive a reasonable construction. (*Gray v. Ulrich*, 8 Kan., 112; *Harrington v. Fish*, 10 Mich., 415.)

Where the acknowledgment of a deed is taken without the state by a commissioner of deeds appointed by the executive authority of such state, no proof of his authority other than authentication by his seal is required. (*Smith v. Van Gilder*, 26 Ark., 527; *Vance v. Schuyler*, 1 Gil. [Ill.], 160; *Thompson v. Schuyler*, 2 Gil. [Ill.], 271; *Irving v. Brownell*, 11 Ill., 402.)

A party interested in part of an entire tract may take the acknowledgment of a distinct interest in the same tract. (*Dussaume v. Burnett*, 5 Ia., 95.)

An officer related to one of the parties may take an acknowledgment, because the act is not judicial but ministerial. (*Lynch v. Livingston*, 6 N. Y., 422; *Kimball v. Johnson*, 14 Wis., 682*.)

The fact that an acknowledgment is taken by a party to the conveyance does not invalidate the deed. It is good between the parties and those who have actual notice of its existence. (*Beaman v. Whitney*, 20 Me., 413; *Hogans v. Carruth*, 18 Fla., 587; *Stevens v. Hampton*, 46 Mo., 404; *Caldwell v. Head*, 17 Mo., 561; *Cooley v. Rankin*, 11 Mo., 642; *Black v. Gregg*, 58 Mo., 565.)

The current of authority is to the effect that the taking of an acknowledgment is an act purely ministerial in its character, and not in any sense judicial. It involves no compulsion or summons

of any person who does not appear of his own accord, and rarely, if ever, requires an investigation of the circumstances under which the deed was executed. (*Learned v. Riley*, 14 Allen [Mass.], 109; *Odiorne v. Mason*, 9 N. H., 24; *Hill v. Bacon*, 43 Ill., 477; *Biscoe v. Byrd*, 15 Ark., 655; *Schultz v. Moore*, 1 McLean [U. S.], 520.)

A defective acknowledgment can be taken advantage of only by a purchaser for a valuable consideration. (*Bishop v. Schneider*, 46 Mo., 472; *Mastin v. Halley*, 61 Mo., 196; *Choteau v. Burlands*, 20 Mo., 482.)

Reference was also made to the following cases: *Connell v. Galligher*, 36 Neb., 749; *Hoy v. Allen*, 27 Ia., 208; *Lake v. Gray*, 30 Ia., 415, 35 Ia., 459; *Doe v. Naylor*, 2 Blackf. [Ind.], 32; *Ricks v. Reed*, 19 Cal., 571.

*Wharton & Baird* and *J. E. Nevin*, contra:

One who was a member of the Omaha Real Estate & Trust Company, and therefore a party in interest, could not properly witness or acknowledge the mortgage. (*Wilson v. Traer*, 20 Ia., 233; *Child v. Baker*, 24 Neb., 188; *Winsted Savings Bank v. Spencer*, 26 Conn., 194; *Hammers v. Dole*, 61 Ill., 307; *West v. Krebaum*, 88 Ill., 263; *Doil v. Moore*, 51 Mo., 589; *Withers v. Baird*, 7 Watts [Pa.], 227; *Kimball v. Johnson*, 14 Wis., 734.)

*Bartlett, Crane & Baldrige*, also for defendants in error.

HARRISON, J.

October 3, 1891, an action of ejectment was commenced by the plaintiff against Joseph S. Kragscow in the district court of Douglas county the

property involved being described in the petition
as follows: "Lots number thirty-nine (39) and
number forty (40), in block number one (1), in
Saunders ·& Heimbaugh's Addition to Walnut
Hill, an addition to the city of Omaha." It was
alleged that the defendant had, ever since the 23d
day of December, 1890, unlawfully kept and was
holding possession of the property, and keeping
plaintiff out of possession thereof.  It was also
charged that defendant had received rents and
profits of the premises to the amount of $94.
Plaintiff prayed judgment for the possession of
the property and a recovery of the rents and
profits.  Defendant answered, admitting posses-
sion of the property and alleging affirmatively his
lawful possession thereof since February 1, 1888,
and denying the other allegations of the petition.
To this there was a reply denying the allegations
of the answer in regard to the lawful possession
of the defendant.  On the same date, October 3,
1891, three other cases of ejectment were insti-
tuted in the same court, one against Sarah M.
Shaw and others, one against John W. Rodefer
and others, and one against Chas. E. Reiter,
each to recover possession of property situate in
the addition hereinbefore stated; also to recover
rents and profits of the premises involved in each
case, alleged to have been received by the parties
defendants.  Issues were joined, and on March
27, 1893, the first mentioned case was called for
trial, a jury was waived and trial had to the court.
At the beginning of the trial the parties entered
into the following agreement, which was made of
record: "It is agreed by the parties to try this
case, and that a finding shall be had by the court,
and the other cases, being numbers 27—160,

27—161, 27—162, 27—163, shall abide the result of the finding in this case, except as to proof and finding and judgment as to rental values." The cases have, by stipulation, all been presented to this court together, there being a separate record and bill of exceptions in each case. The judgments in the district court were adverse to the plaintiff and reversals are sought here.

In the brief filed for plaintiff there is a statement of some facts which serves, and is almost necessary, as an introduction, in order to a proper understanding of the other and further facts and questions developed by the evidence as offered and introduced or rejected during the trial. We will, for this statement, quote from the brief: "Prior to the 1st day of August, 1886, the Omaha Real Estate & Trust Company purchased the tract of land on which Saunders & Himebaugh's Addition to Walnut Hill was, after said purchase, situated, and laid out and platted said addition upon said tract, and duly dedicated the same. On August 1, 1886, the said Omaha Real Estate & Trust Company sold and conveyed the premises in controversy in these actions, as well as a large number of other lots in said addition, to the Pleasant Hill Building Association, a corporation of Douglas county, Nebraska. On that day the Omaha Real Estate & Trust Company loaned to the Pleasant Hill Building Association sixteen thousand one hundred and seventy-five ($16,175) dollars, and took the notes of said last named corporation therefor, bearing interest at eight and ten per cent, and, as security for the payment of said notes, received from said corporation a mortgage for said amount upon the property in controversy in these suits, as well as the other property

which was conveyed to said corporation by plaintiff August 1, 1886, which mortgage was, immediately upon delivery thereof, recorded. On or about March 22, 1890, an action to foreclose said mortgage was begun, which resulted in a decree of foreclosure against all of the real estate described in said mortgage and an order of sale thereof, directing J. F. Gardner, as special master commissioner, to sell the premises after appraising and advertising the same, who proceeded to appraise, advertise, and sell the same. At the said sale the Omaha Real Estate & Trust Company became the purchaser of all the lots described in the mortgage and the decree, which included the property in controversy in these suits in ejectment. The sale of these lots was confirmed by the court and deed ordered to be made to the purchaser, and on December 23, 1890, a deed was executed and delivered by said special master commissioner for the premises in controversy herein, and other property, to the Omaha Real Estate & Trust Company, which deed was on that day recorded." Counsel for plaintiff states that it was his understanding that plaintiff and defendants claimed that their rights to the properties arose from the same or a common source of title, the Pleasant Hill Building Association, and in accordance with this belief or understanding, he first introduced in evidence the mortgage foreclosure proceedings which were noticed in the preliminary statement of facts, also the deed of the special master commissioner, made to plaintiff pursuant to its purchase of the property at the foreclosure sale. A certified copy of the deed executed by plaintiff to the Pleasant Hill Building Association was offered on behalf of plaintiff, for

the purpose of showing that at the time of the foreclosure proceedings such association had the title to the property, and after introducing some evidence in regard to rental values of the premises in controversy the plaintiff rested his case, but the record shows that the rest was withdrawn and the plaintiff was allowed to introduce further testimony. We will now say that whenever hereafter reference is herein made to a deed, conveyance, or will, it will be one which purports to transfer or affect the premises in controversy. Counsel for plaintiff next offered as evidence a warranty deed from Alexander H. Baker and wife to Pierce C. Himebaugh and Nathan Merriam; then a deed from the last mentioned parties to the Omaha Real Estate & Trust Company, and next, a quitclaim deed from Alexander H. Baker to the same company. There was next introduced a plat of Saunders & Himebaugh's Addition to Walnut Hill and the record shows the taking of testimony closed. Then appears the following: "Plaintiff now asks to withdraw his rest and show source of title from the government of the United States to Alexander H. Baker. I desire also to show by extrinsic evidence, or by the original deed to the Pleasant Hill Building Association, executed by the Omaha Real Estate & Trust Company, that it was conveyed in the conveying clause to the Pleasant Hill Building Association; and I ask it on the ground of surprise, because, until today, it was never brought to my notice that there was any defect in the records of the grantee of the Omaha Real Estate & Trust Company,—that is, it was never brought to my notice that the grantee's name in the conveying clause was not the Pleasant Hill Building Association,—and I

offer to make this proof by the production of the original deed to the Pleasant Hill Building Association, the secretary of that association, I believe, being in town, and having in his possession the original deed. I don't include in the proposition an offer of the deed for the purpose of showing that the party who witnessed the deed was other or different than the one that has been shown to be a stockholder of the Omaha Real Estate & Trust Company."

The Court: "I will allow you to trace the title from the government down to Baker if you want to. I will allow you to introduce the original deed from the Omaha Real Estate & Trust Company to the Pleasant Hill Building Association, if you can, but inasmuch as you say that in no manner you expect to prove the witnessing of the deeds is different from what has been shown."

Mr. Covell: "And further, if the original deed to the Pleasant Hill Building Association cannot be found, I ask to show by parol evidence, in consequence of ambiguity in the deed, that the deed was actually made to the Pleasant Hill Building Association, instead of to the Pleasant Hill Association, by reason of ambiguity in the deed."

The Court: "You can introduce what you stated—chain of title from the government down to A. H. Baker, and the original deed, if you can, for the purpose of showing whatever the deed may show."

There was then offered in evidence a certified copy of a patent from the United States to Samuel Conger, a certified copy of the record of a deed from Conger to Enos Lowe, and a certified copy of the record of a deed from Enos Lowe and wife to Roswell G. Pierce. To this last deed, when of-

fered, a number of objections were interposed, among which was the following: "That the deed purports to be acknowledged before Thomas J. Ratham, a commissioner of deeds for Nebraska, for Pottawattamie county, Iowa; that the acknowledgment has not affixed or attached thereto the certificate of the secretary of state, as required by the laws in force at the time of the recording of the same, and was therefore not entitled to admission in the records." The objection was sustained and the deed excluded. There was next offered in evidence a deed by the sheriff of Douglas county to one Joel S. Smith, purporting to convey any title held by Roswell G. Pierce. This deed, on objection, was excluded. This was followed by an offer of a deed which, in its recitals, gave the name of the grantor as Joel S. Smith, the same name being stated in the acknowledgment, but the instrument was signed by John S. Smith. On objection, this deed was excluded. A number of other instruments were offered to complete the chain of title, including the original deed from the Omaha Real Estate & Trust Company to the Pleasant Hill Building Association, also the original mortgage from the building association to the real estate and trust company, both of which were objected to on the ground that no title had been shown in the party grantor in either conveyance, and that the first offered deed was witnessed by a stockholder of the company, who was also its secretary, and purported to have been acknowledged before a person who was a shareholder in the grantor company; that the mortgage was attested by the secretary, also a stockholder of the association, the grantor, and its acknowledgment purported to have been

taken before a stockholder of the company, the mortgagee. The objections were sustained and both deed and mortgage were excluded from the evidence. The counsel for plaintiff at this time asked a witness he had called to the stand whether he was acquainted with defendant John S. Kragscow and the defendants in the other actions, and following his answer asked him: "You may state, if you know, under what claim of title the defendants in this action claim, if they make any claim of title." Immediately succeeding this in the record appears the following:

"Objection by defendant, first, as incompetent, irrelevant, and immaterial; second, for the reason that counsel for the plaintiff only asked permission of this court at the time these cases were being decided by his honor and at the close of his decision to simply make a record here showing title from the government down to Baker, and also asking the privilege to offer in evidence the original deed from the Omaha Real Estate & Trust Company to the Pleasant Hill Building Association, and permission having been given by the court simply for those two purposes and no other."

The Court: "The court only gave permission that in these four cases, after having announced the opinion of the court against the plaintiff when the case was regularly reached on the 27th day of March, 1893, counsel for the plaintiff then requested that the plaintiff be permitted to introduce evidence of title from the government down to Baker and the original deed from the Omaha Real Estate & Trust Company to the Pleasant Hill Building Association, that leave was granted after the judgment had been announced by the

court plaintiff in those four cases, and the court will not now permit evidence to be introduced other than as that requested by the counsel for plaintiff and sustains the objection going into the evidence sought by these interrogatories. Plaintiff excepts.

"Plaintiff offers to prove by this witness that the defendants in the several actions in which we are seeking to introduce testimony claim under the Pleasant Hill Building Association and to be in possession of the premises in controversy in this action under the Pleasant Hill Building Association by virtue of contracts of sale for the premises involved in this action executed to them by the Pleasant Hill Building Association; and this offer is made of proof by this witness because he knows the fact, having seen the contracts himself in the hands of the defendants to this action, whom he has stated that he knew."

The same objection was made to the offer as to the question, and this further: "And for the additional reason that the testimony offered is not the best evidence, the contracts themselves being the best evidence." The objections to question and offer were sustained.

Before proceeding with the examination and discussion of the alleged errors of the trial court, relied upon by counsel for plaintiff in the argument herein, it may be as well to state that defendants did not offer any proof of title, but rested their rights and relied upon possession of the premises. This, in actions of ejectment, they could do, as it is the rule therein that the plaintiff must recover upon the strength of his own title or right and cannot rely upon the weakness of that of his adversary the defendant. (*Gregory v. Ken-*

*yon*, 34 Neb., 640; *Franklin v. Kelley*, 2 Neb., 112; *Morton v. Green*, 2 Neb., 451; *O'Brien v. Gaslin*, 24 Neb., 561; *Buck v. Gage*, 27 Neb., 306.) If there is a common source of title, or the defendant claims under the same person as plaintiff, in proving title the plaintiff need go no further back than the common source (*Barton v. Erickson*, 14 Neb., 164; *Carson v. Dundas*, 39 Neb., 503); but where this is not the case, the plaintiff must show a grant from the state or United States and a regular and uninterrupted chain of title to himself, or, in other words, he must prove title. No doubt proof of title would be sufficient if possession necessary to establish title was shown either in plaintiff or those under whom he claims, but with this we have nothing to do in this case. It was not shown during the trial that plaintiff and defendants claimed under the same person or from common source of title; hence it devolved upon plaintiff to prove title in itself. In the attempt to do this, as we have before stated, as one link of the chain of title there was offered a certified copy of the record of a deed from Enos Lowe and wife to Roswell G. Pierce, which was objected to because it was acknowledged before a commissioner of deeds for Nebraska, in a county of the state of Iowa, and was not authenticated by the certificate of the secretary of state, which objection was sustained and the deed not allowed in evidence. This is one of the errors of which counsel for plaintiff complains, and for the strength of this complaint he relies upon matter contained in certain sections of the statute, viz., sections 4 and 5 of chapter 73, Compiled Statutes, which are in reference to the acknowledgment of deeds or instruments of conveyance and are as follows:

"Sec. 4. If executed and acknowledged or proved in any other state, territory, or district of the United States, it must be executed and acknowledged or proved either according to the laws of such state, territory, or district, or in accordance with the law of this state, and such acknowledgment shall be made before and certified by any officer authorized by the laws of such state, territory, or district to take and certify acknowledgments, or by a commissioner of deeds appointed by the governor of this state for that purpose.

"Sec. 5. In all cases provided for in section four of this chapter (if such acknowledgment or proof is taken before a commissioner appointed by the governor of this state for that purpose, notary public or other officer using an official seal) the instrument thus acknowledged or proved shall be entitled to be recorded without further authentication; *Provided,* That in all other cases the deed or other instrument shall have attached thereto a certificate of the clerk of a court of record or other proper certifying officer of the county, district, or state within which the acknowledgment or proof was taken, under the seal of his office, showing that the person whose name is subscribed to the certificate of acknowledgment was, at the date thereof, such officer as he is therein represented to be; that he is well acquainted with the handwriting of such officer; that he believes the said signature of such officer to be genuine, and that the deed or other instrument is executed and acknowledged according to the laws of such state, district, or territory."

To which we will add the following from section 13 of the same chapter:

"Sec. 13. Every deed acknowledged or proved, and certified by any of the officers before named, including the certificate specified in section five of this chapter, whenever such certificate is required by law, may be read in evidence without further proof, and shall be entitled to be recorded," etc.

In support of the defendants' contention that the excluded conveyance was not authenticated as by law required, we are referred especially to section 36 of this same chapter, 73, which is as follows: "When any deed or other instrument shall be proved or acknowledged, or any oath or affirmation shall be taken before any commissioner appointed by virtue of this chapter, before it shall be entitled to be used, recorded, or read in evidence, in addition to the preceding requisites there shall be subjoined or affixed to the certificate signed and sealed by each commissioner as aforesaid a certificate under the hand and official seal of the secretary of Nebraska certifying that such commissioner was, at the time of taking such proof or acknowledgment, or of administering such oath or affirmation, duly authorized to take the same, and that the secretary is acquainted with the handwriting of such commissioner, or has compared the signature to such certificate with the signature of such commissioner deposited in his office, and has also compared the impression of the seal affixed to such certificate with the impression of the seal of such commissioner deposited in his office, and that he verily believes the signature and the impression of the seal of the said certificate to be genuine."

The three or four preceding sections of the chapter are in reference to the appointment of

commissioners of deeds and in a general way defining their duties and powers. Section 36, quoted above, appears as section 44, chapter 31, entitled "Real Estate and the Alienation Thereof by Deed," approved January 26, 1856, also as section 41, chapter 43, Revised Statutes, 1866, under title "Real Estate," section 36, General Statutes, 1873, and section 4360, Cobbey's Annotated Statutes, 1893. This section was enacted in 1856 and was re-enacted February 15, 1864, in an act entitled "An act to revise and consolidate the laws of a general nature passed at the second session of the legislative assembly of this territory," being section 42 of chapter 12 of the act. February 13, 1865, there was passed an act entitled "An act to amend chapter twelve of an act entitled 'An act to revise and consolidate the laws of a general nature passed at the second session of the legislative assembly of this territory,' approved February 15, 1864" (Session Laws, 1865, p. 53), and which was as follows:

"Section 1. *Be it Enacted by the Council and House of Representatives of the Territory of Nebraska,* That section five of chapter twelve of an act entitled 'An act to revise and consolidate the laws of a general nature passed at the second session of the legislative assembly of this territory' is hereby amended so as to read as follows, namely: In all cases provided for in section four of this act (if such acknowledgment or proof is taken before a commissioner appointed by the governor of this territory for that purpose, notary public, or other officer using an official seal) the instrument thus acknowledged or proven shall be entitled to be recorded without further authentication. * * *

"Sec. 2. This act shall take effect and be in force from and after its passage.

"Approved February 13, 1865."

It is strenuously argued by counsel for plaintiff that the passage of this act operated a repeal by implication of the section now numbered 36, then numbered 42 of chapter 12, which required the certificate of the secretary of state to be attached to the acknowledgment of a deed taken before a commissioner of deeds.   It is clear that there was an irreconcilable conflict- between section 42 of chapter 12 and section 5 as- amended by the later act, that they could not both stand and be enforced, for, if a deed was executed and acknowledged before a commissioner of deeds and presented for record without the certificate of the secretary of state, it would be sufficiently authenticated under the provisions of section 5 as amended, but its record necessarily denied if the provisions of section 42 (now 36) were enforced, and the last act, or the amended section 5 prevailed, and the other section was repealed by implication. (*State v. Howe,* 28 Neb., 618.)   Sections 4 and 5, as enacted January 26, 1856, were as follows:

"Sec. 4. If acknowledged or proved in any other state or territory or district of the United States, it must be done according to the laws of such state, territory, or district, and must be acknowledged or proved before any officer authorized to do so by the laws of such state, territory, or district, or before a commissioner appointed by the governor of this territory for that purpose.

"Sec. 5. In cases provided for in the last section, unless when taken before such commissioner, the deed shall have attached thereto a
43

certificate of the clerk or other proper certifying officer of a court of record of the county or district within which it was taken, under the seal of his office, that the person whose name is subscribed to the certificate of acknowledgment or proof was, at the date thereof, such officer as he is therein represented to be; that he is well acquainted with the handwriting of such officer, and that he believes the signature of such officer to be genuine, and that the deed is executed and acknowledged, or proved according to the laws of such state or territory." (Session Laws, 1856, p. 80, ch. 31, secs. 4, 5.)

Section 4 was again enacted in the same terms, February 15, 1864. Section 5 was at the same date again enacted with the following changes: "In place of the words 'unless when taken' the words 'except where such acknowledgment is taken' were used, and also the words 'or state' were inserted after the word 'district,' and the words 'within which the acknowledgment was taken' were substituted for the words 'within which it was taken.'" Section 4 was again enacted unchanged February 12, 1866, and section 5, as amended February 13, 1865 (the amendment we have hereinbefore noticed), was also again enacted February 12, 1866, but the section in regard to the authentication of a conveyance acknowledged before a commissioner of deeds by the certificate of the secretary of state also appeared in the Revised Statutes of 1866 as section 41 of chapter 43 thereof. The sections 4 and 5 hereinbefore referred to were, by such numbers, sections of this same chapter, and there was the same conflict between the provisions of section 41 and section 5 as had existed as they appeared

as numbered in prior enactments, subsequent to
the amendment of section 5, February 13, 1865, as
hereinbefore noticed.   It was said in an opinion
in *Albertson v. State*, 9 Neb., 429, in which this
court considered the question of a conflict be-
tween different parts of sections of the Revised
Statutes of 1866: "The Revised Statutes of 1866
were passed as one act, and in such case the well-
known rule applies that where there is an irrec-
oncilable conflict between different sections or
parts of the same statute, the last words stand,
and those which are in conflict therewith are, so
far as there is a conflict, repealed;" and it was
held: "Where there is an irreconcilable conflict
between different sections or parts of the same
statute the last words stand and those in conflict
therewith are repealed."   Applying this rule in
the case at bar, the section now numbered 36 must
stand and so much of section 5 as is in conflict
therewith must be held to be repealed, or without
force.

It is further insisted in this connection by coun-
sel for plaintiff that by the second section of an
act passed June 13, 1867, to amend section 38 of
chapter 43 of Revised Statutes of 1866, entitled
"Real Estate," now section 33, chapter 73, Com-
piled Statutes, and a part of section 4357 of Cob-
bey's Annotated Statutes of 1893, which reads as
follows:—"All acts performed in pursuance of
the laws of this state or of the laws of the terri-
tory of Nebraska, by commissioners of deeds here-
tofore appointed by the governor of the territory
of Nebraska shall be deemed and held to be valid
and binding in law" (Session Laws, 1867, special
session, p. 52, sec. 2),— has made binding and le-
galized all deeds acknowledged before commis-

sioners of deeds prior to its passage, and the deed from Lowe to Pierce, being one of such, was thus relieved of any defect which may have existed; and further, that section 4 of chapter 61 of an act passed in 1887, which section is now section 4*a* of chapter 73 of the Compiled Statutes and section 4328 of Cobbey's Annotated Statutes of 1893, and which reads as follows:—"All deeds heretofore executed and acknowledged in accordance with the provisions of this act shall be and are hereby declared to be legal and valid,"—was effectual in curing any defect which may have existed in the authentication of the deed from Lowe to Pierce. These two sections, when examined, and the first in connection with the provisions of the section of which it was enacted as amendatory, it is plain have no reference to the authentication of the acts or deeds mentioned in them and were not passed with the purpose in view of relieving acts performed or deeds acknowledged before commissioners of deeds, of any defects in their authentication and did not do so for the deed in question. The deed served no doubt to pass the title to the land from the grantor to the grantee. This it would do without an acknowledgment or authentication; but lacking the certificate of the secretary of state, it was not entitled to be used, recorded, or read in evidence, and if recorded, a certified copy of it as so recorded could not properly be received in evidence, and the trial court did not err in rejecting it when offered.

In the case of *Hoadley v. Stephens*, 4 Neb., 431, in which the question of whether a deed executed in Virginia and acknowledged before a justice of the peace there would be received in evidence in

the courts of this state without further authentication or any proof that it was executed and acknowledged according to the laws of Virginia, sections 4 and 5 of the statutes as hereinbefore quoted, were referred to and their provisions applied, and it was held: "Where a deed is executed and acknowledged in another state before a commissioner of deeds of this state, a notary public or other officer using an official seal, the law presumes a compliance with the law of the place of execution, and no further authentication is necessary. But in all other cases there must be attached thereto a certificate of the clerk of a court of record or other certifying officer, under his official seal, showing that the person taking such acknowledgment was the officer therein represented; that he is well acquainted with his handwriting; that he believes his signature to be genuine, and that such deed is executed according to the laws of such state." Whether the provisions of section 36 (as it was then) of the General Statutes, requiring the certificate of the secretary of state to be attached to a deed acknowledged before a commissioner of deeds, was considered we cannot say. No reference to or mention of it was made in the opinion. It follows from the views herein expressed that so much of the rule announced in the case alluded to as affected acknowledgments taken before commissioners of deeds must be overruled.

A certified copy of the record of a deed executed by the sheriff of Douglas county, purporting to convey the title of Roswell G. Pierce to Joel S. Smith, was offered, and immediately following this a certified copy of a deed which recited that the grantor's name was Joel S. Smith,

and by the acknowledgment he was stated to be Joel S. Smith, but the deed was executed by John S. Smith. This offered testimony was objected to and the objection sustained, and, we think, correctly. It was clearly not competent to prove a conveyance of any title of Joel S. Smith by a deed signed by John S. Smith. They would not be presumed to be the same persons. Conceding for the purpose of argument that the title was in Joel S. Smith, conveyance of the title from him to a grantee could not be proved by a deed executed by John S. Smith in the absence of proof that he ·was the same person as Joel S. Smith. (*Ambs v. Chicago, St. P., M. & O. R. Co.*, 46 N. W. Rep. [Minn.], 321, and cases cited.) There was offered by plaintiff in connection with the certified copy of the record of this deed a certified copy of the record of an affidavit, in which it was sought, by statements therein made, to show that the deed was that of Joel S. Smith and had been executed by him and not John S. Smith, but on objection this was excluded. In this action, we think, there was no error. It was the record of an *ex parte* affidavit and was plainly not competent as evidence on the trial of a cause of this nature.

' ·The determination of the further question of the competency as evidence of the deeds attested by a stockholder of the grantor or grantee, and acknowledged before a stockholder, is not necessary to a decision of the case and we need not now discuss or settle it. If it was error to exclude the deed, it was error without prejudice, as the proof of the chain of title was broken and incomplete before these deeds were reached.

There is one further matter of complaint urged in behalf of plaintiff, viz., that the trial court

erred in not allowing the proof offered to show
that the defendants were in possession of and
claiming a right to the premises involved in the
action, under and by virtue of contracts of pur-
chase with the same person or company under
whom the plaintiff claimed title, or that the
source of title was a common one.   It will be re-
membered that the case had been tried on the
theory, as stated by counsel for plaintiff, that the
parties to the action were claiming under a com-
mon source of title, and had been submitted to
the court and a decision had been announced on
the conditions as established by the circumstan-
ces and facts then in evidence and before the
court, and on motion of plaintiff the case had
been reopened for the hearing of further testi-
mony on particular subjects specifically named,
to prove a chain of title from the United States,
and to offer the original deed from the Omaha
Real Estate & Trust Company to the Pleasant
Hill Building Association.   Full opportunity was
afforded for the introduction of the matters re-
quested, and at the close of the hearing thus ac-
corded the offer was made of testimony in regard
to the contracts of purchase.   The opening of a
case after the parties thereto have announced
the closing of offers of testimony, at the instance
or request of either, for the offer or introduction
of further evidence, is a matter which rests wholly
within the discretion of the trial judge; but it
should be given a wide range and liberally exer-
cised in cases where such action will subserve
the due administration of justice between liti-
gants, always with a proper regard, however, to
the observance and enforcement of settled rules
and laws of procedure and an orderly course of

business. In full view of what had transpired during the trial of this case and the stage of the proceedings at which the action of the court against which this complaint is directed occurred, we cannot say that there was any abuse of its discretion in such action calling for a reversal of the judgments. The judgments of the trial court must be

AFFIRMED.