STATE of Missouri, Respondent,

v.

John JACKSON, Appellant.

No. 11837.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 3, 1980.

---

5. The judicial review of an administrative hearing before the AHC under § 536.050.2 goes to the Court of Appeals. § 161.337.

**834**

Gene A. Hilton, Camdenton, for appellant.

John Ashcroft, Atty. Gen., Frank J. Murphy, Paul R. Otto, Asst. Attys. Gen., Jefferson City, for respondent.

FLANIGAN, Chief Judge.

Count I of the information charged defendant with attempted burglary in the second degree (§ 560.070; § 556.150)[1] and Count II charged him with possession of a burglar's tool (§ 560.115). A jury found defendant guilty under both counts. The punishment imposed was two years imprisonment for each offense, the terms to run consecutively. Defendant appeals.

1. All references to statutes are to RSMo 1969, V.A.M.S. and all references to rules are to Mis-

Defendant's first point is that Count I of the original information was fatally defective in that it failed to charge two elements of the offense and that the trial court erred in permitting the state to amend the information to include the omitted elements. Defendant argues that the defects in Count I deprived the trial court of jurisdiction with respect to that count and that it was not amendable. Defendant also argues that he was denied his "right" to a preliminary hearing on Count I as amended.

Defendant asserts that Count I of the original information was defective in the following respects: (1) There was no allegation as to the ownership of the building which was the subject of the attempted burglary; (2) There was no allegation that defendant had the intent to steal or commit any crime within the building.

With respect to the first defect defendant relies upon *State v. Rains*, 537 S.W.2d 219, 226 (Mo.App.1976) where it is said: "The usual holding is that an information for burglary must allege the ownership of the building burglarized; otherwise it is fatally defective." With regard to the second defect defendant relies upon *State v. Vandergriff*, 403 S.W.2d 579, 581[6] (Mo.1966), holding that a second degree burglary information is defective for failing to charge the appropriate intent.

The instant offense occurred on July 15, 1975, which was prior to the effective date of the new Criminal Code. Count I of the information purported to charge attempted burglary, not burglary itself. In *State v. Dentman*, 588 S.W.2d 508, 510 (Mo.App. 1979) the court said: "This offense was committed prior to the effective date of the new Criminal Code. To properly charge an attempt to commit a crime, the information must have contained three elements: (1) the intention to commit the crime; (2) performance of some act toward the commission of the crime; and (3) the failure to consummate its commission. § 556.150 RSMo.1969; *State v. Fletcher*, 512 S.W.2d 253[2] (Mo.App.1974)."

souri Rules of Court, V.A.M.R.

Assuming but not deciding that the two defects, which would be fatal to an information charging burglary, are also fatal to an information charging attempted burglary,[2] this court holds that defendant's position is unsound.

The original information identified the building, which was the subject of the attempted burglary, as "Camdenton Medical Center in Camdenton, Missouri." The court permitted the state to amend the information by inserting, immediately following the designation of the building, the following: "the property of Camdenton Medical Center, Incorporated." The state was also permitted to amend the information by adding the language, "with the intent to take, steal and carry away certain goods, wares and merchandise kept and deposited in said building" to remedy the second alleged defect.

Although defendant is correct in his assertion that a sufficient information is a jurisdictional requirement[3] it does not follow that a fatally defective information is not amendable. At the time of the instant proceedings, Rule 24.02 was in effect. "Criminal Rule 24.02, V.A.M.R., supplanting [§§ 545.290 and 545.300] provides that an information may be amended '* * * at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.' The Rule is as broad as §§ 545.290 and 545.300, which permit amendments in matters of form or *substance* at any time before trial. Section 545.300, first appearing in Laws of 1925, page 194 (§ 3564, RSMo 1929), provides that '* * * no such amendment shall be allowed as would operate to charge an of-fense different from that charged or *attempted to be charged* in the original information.' " *State v. Starks*, 419 S.W.2d 82, 84 (Mo.1967). (Emphasis in original.)

Missouri cases are to the effect that even if an essential element is omitted from the original information, it may be supplied by amendment if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced. *Johnson v. State*, 485 S.W.2d 73, 75 (Mo. 1972); *State v. Jarrett*, 481 S.W.2d 504, 507 (Mo.1972); *State v. Morris*, 470 S.W.2d 467, 469 (Mo.1971); *State v. Lafferty*, 416 S.W.2d 157, 160 (Mo.1967).

The amendments to Count I were of the type permitted under Rule 24.02 and the foregoing authorities. The amended information, as stated in *Johnson*, supra, "merely correctly and sufficiently charges the offense attempted to be charged in the original information."

Defendant was accorded a preliminary hearing and there is no merit in his contention that the two amendments to the information entitled him to another. *Johnson v. State*, supra, at 75[3].

Defendant's first point has no merit.

Defendant's second point is that the evidence, with respect to each count, is insufficient to support the verdict.

Whether or not the circumstantial evidence is sufficient to support the conviction must be ascertained by the application of the test set forth in *State v. Thomas*, 452 S.W.2d 160, 162[1–3] (Mo.1970). *Thomas* holds that the facts and circumstances relied upon by the state to establish guilt

---

**2.** "The offense that the defendant is charged with having attempted to commit must be clearly stated and identified, but it has been held that it need not be set out as fully and specifically as would be required in an indict-ment for the actual commission of such of-fense." 41 Am.Jur.2d Indicts. and Infos. § 158, p. 979. Cf. *State v. Hughes*, 76 Mo. 323 (1882), where it is said: "The description of the prop-erty need not be as particular in an indictment for an attempt to commit a larceny as in one for an accomplished larceny."

An example of an adequate information charging pre-code attempted burglary in the second degree is set forth in *State v. Kiddoo*, 354 S.W.2d 883, 884[1] (Mo.1962).

**3.** "There can be no trial, conviction or punish-ment for a crime without a formal and suffi-cient accusation. *State v. McKinley*, 341 Mo. 1186, 111 S.W.2d 115, 118 (1937). A court is without jurisdiction to try a person for an of-fense unless the offense has been charged by information or indictment." *State v. Handley*, 585 S.W.2d 458, 461 (Mo.1979).

"must not only be consistent with each other and with the hypothesis of defendant's guilt, but they must also be inconsistent and irreconcilable with his innocence and must point so clearly and satisfactorily to his guilt as to exclude every reasonable hypothesis of innocence."

■■■ The circumstances need not be absolutely conclusive of guilt and they need not demonstrate an absolute impossibility of innocence. *State v. Taylor*, 445 S.W.2d 282, 284[5] (Mo.1969). Circumstantial evidence showing merely that the defendant had an opportunity to commit the offense charged and creating a suspicion of guilt, without more, is insufficient to make a submissible case. *State v. McGlathery*, 412 S.W.2d 445, 447[3] (Mo.1967). As *McGlathery* points out, at p. 447, "Application of the rules is, of course, a case to case matter, with prior cases, based on necessarily different facts, of minor authoritative impact."

■■■ The Camdenton Medical Center is located on Highway 5 North in Camdenton. The building is rectangular, with an attached three–car garage in the rear or east side of the building. The north end of the garage is enclosed by a wall, the west wall of the garage is the east wall of the building, and the south end of the garage is enclosed by a wall of the building in which is located a door affording access to the building. The east side of the garage is open with three pillars forming three parking stalls.

The building is equipped with a silent burglar alarm. When the circuit is broken an alarm is sent automatically to the sheriff's office and to the home of each physician. Dr. Melvin Hayden, who left the building at 9:40 p. m., "turned the alarm system on when I left." Drugs and other valuable things were in the building. Dr. Hayden also testified that the building was owned by the corporation named in the information.

At 11:20 p. m. the burglar alarm sounded and the dispatcher at the sheriff's office notified Camdenton Police Chief Orville Whipperman, who was in a patrol car. Whipperman, driving fast, proceeded immediately to the Camdenton Medical Center where he arrived at 11:22 p. m. Whipperman "headed around toward the back of the garage" and stopped his vehicle with the headlights shining on the south portion of the garage. Whipperman saw the defendant "coming out of the south side of the garage building." Immediately thereafter Whipperman saw a man, later identified as Jerry Hayes, coming out of the north end of the garage. Arriving on the scene at that time were two other police cars, one driven by deputy sheriff Miller and one by officer Christenson.

Defendant and Hayes were searched and handcuffed. Whipperman went back into the garage area and examined the door. According to Whipperman, the door was "cracked open about an inch and there were considerable pry marks on it." After the defendant had been given the *Miranda* warnings defendant told Whipperman that he and Hayes were hitchhiking and "they went in there to go to the bathroom and possibly spend the night." The officers searched the area. A flashlight was found on the north side of the garage, the area from which Hayes emerged.

Whipperman testified, without objection, that "a jimmy or a tire tool called a jimmy" was found on the floor of the south portion of the garage. The tire tool had fresh pry marks and scratches. "The pry marks on the door were made by a sharp instrument or a bar of some sort. There was no rust underneath the marks and they were shiny."

Officers Christenson and Miller remained at the scene until the doctors arrived. Miller went inside the building and looked around. No one was inside. According to Miller the tire tool was lying on the floor of the garage five to seven feet from the door. "There were some marks on the end of the tire tool with some paint the same color as on the door." Miller had checked the door the evening before and there were no pry marks or other evidence of attempted entry on it at that time.

The inside of the door was braced with a "2 × 6" which prevented the door from being opened more than an inch. At the top of the door was the "security breaker" for the alarm system and Miller saw "that the security on the door was broken." None of the other "securities" in the system was broken. The door knob was "all bent up and had a crease on it."

No one was in the vicinity of the building other than the defendant and Hayes at the time the officers arrived. Christenson testified that "the door was standing open a fraction of an inch and I thought someone was in there. I turned around and went back to the patrol car where the suspects were and asked them if anyone was in there, 'if there was they might come out feet first.'" Defendant replied, "no."

The officers inspected the garage floor and saw no indication that either defendant or Hayes had answered a call of nature. There were some black spots around the middle of the door, which appeared to be "heel or kick marks." The defendant was wearing "black dress boots." The door would not open because of the 2 × 6 but it would open enough to break the security breaker. Defendant told Miller that he had not seen anybody, other than Hayes, in the area before the officers arrived.

Defense witness Dianna Harper testified that earlier in the day of July 15 she saw defendant in a bar in Kansas City. Defendant said he was going to hitchhike to Camdenton and a man in the bar said he would like to hitchhike with defendant.

Defendant argues that the evidence is insufficient, with respect to Count I, because the state's witnesses "did not see defendant make any attempt whatsoever to enter the building," and that the evidence is insufficient, with respect to Count II, because the state's witnesses "did not see defendant in possession of the jimmy."

From the foregoing evidence the jury was entitled to find that an attempted burglary of the building took place at 11:20 p. m.; that the tire tool was used as a jimmy in an unsuccessful attempt to force open the door; that the police officers arrived at 11:22 p. m. at which time defendant and Hayes were in the garage on private property. Defendant was in the south portion of the garage within a few feet of both the door and the tire tool which was lying on the floor. Before the officers arrived the defendant and Hayes were the only persons in the vicinity of the building. Defendant professed to have knowledge of the fact that no person was inside the building. The explanation given by defendant for his presence, and that of Hayes, in the garage, was false.

The evidence was sufficient to support the verdict on both counts.

Defendant's second point has no merit.

Defendant's third point is that the trial court erred in giving instruction 5 "because MAI–CR 2.12 is incorporated therein and there was not sufficient evidence that defendant was an active participant or acted knowingly with common purpose together with Jerry Hayes."

Instruction 5, the verdict–director on Count I, is based on MAI–CR 2.12, as amended 1–13–75, effective 3–1–75. At the time of the instant trial the latter instruction was in use.

After requiring the jury to make the necessary findings with respect to attempted burglary in the second degree, the instruction contained the following finding:

"Fifth, that the Defendant acted either alone or knowingly and with common purpose together with Jerry Hayes in the conduct referred to in the above paragraphs, then you will find the Defendant guilty of attempted burglary in the second degree."

Defendant argues that there was no evidence of any conspiracy between defendant and Hayes and no evidence that defendant "authorized any actions of Hayes or aided or directed any actions of Hayes." Defendant says that if the jury believed that Hayes, rather than the defendant, committed the acts charged, the instruction allowed the jury to find defendant guilty based on actions of Hayes alone.

An instruction which permits a finding of guilty on a showing that defendant "either alone or knowingly and with common purpose together with others" committed the prohibited act does not amount to submission of the offense of conspiracy, the latter being a separate and distinct offense. *State v. Rice*, 511 S.W.2d 444 (Mo.App. 1974). As *Rice* points out, at 445:

"While an information which charges two or more persons jointly with the commission of a felony may incidentally and inherently include the misdemeanor offense of conspiracy, it does not charge conspiracy but a consummated crime. *State v. Stidham*, 449 S.W.2d 634, 637[1] (Mo.1970). And instructions . . . which submit responsibility by defendant for intentionally and knowingly committing an offense in concert with another, proceed on the principle that a joint, active participant in the criminal conduct of another is equally guilty, and are sanctioned by § 556.170."

Among the instructions given by the court was instruction 7, which was MAI–CR 2.10, including its second paragraph. That portion of this opinion which deals with defendant's second point holds that there was sufficient evidence that defendant was an active participant. When the officers arrived defendant was closer than Hayes to the tire tool and to the door where entry had been attempted. If there is a difference in the strength of the evidence against defendant and that against Hayes, it is stronger against defendant. It is not error to give MAI–CR 2.10 where evidence of joint action is present even though the evidence tends to prove that defendant was the chief actor. *State v. Lue*, 598 S.W.2d 133, 139 (Mo. banc 1980).

Paragraph 5 of the Notes on Use under MAI–CR 2.10 reads: "MAI–CR 2.10 together with either MAI–CR 2.12 or 2.14 should be used where it is not clear from the evidence whether defendant acted alone or with another or others. The unnecessary use of these instructions will not be deemed prejudicial error in absence of a showing of prejudice under the particular circumstances of the case."

There was evidence that defendant acted with Hayes. The giving of instruction 5 was supported by the evidence. *State v. Hayes*, 597 S.W.2d 242, 249–250 (Mo.App.1980); *State v. Willett*, 596 S.W.2d 761, 762 (Mo.App.1980); *State v. Buffington*, 588 S.W.2d 512, 515 (Mo.App.1979); *State v. Champion*, 560 S.W.2d 903, 906 (Mo.App.1978). See also *State v. Garton*, 371 S.W.2d 283, 289[6] (Mo.1963).

Defendant's argument that the instruction entitled the jury to find the defendant guilty based solely upon the action of Hayes is at war with the language of the instruction itself. Under paragraph fifth, the jury was required to find that defendant "acted either alone or *knowingly and with common purpose together with* " Hayes.

Defendant's third point has no merit.

Defendant's fourth point is that the trial court erred in giving instruction 6, the verdict–director on Count II, for the reason that the evidence is insufficient to support a verdict on Count II. This argument was rejected under point 2.

Defendant's fourth point has no merit.

Defendant's fifth point, advanced without citation of authority, is that the trial court erred in giving instruction 7, which is MAI–CR 2.10, because (a) the state did not make a submissible case as to either Count I or Count II, and (b) instruction 7 should have been limited to Count I alone. This opinion has previously rejected ground (a).

In *State v. Ross*, 523 S.W.2d 841, 844[4] (Mo.App.1975), this court held that the giving of MAI–CR 2.10 is not erroneous merely because the instruction makes no reference to separate counts of a multiple–count information. In *Ross*, as here, the court gave MAI–CR 2.70 ( . . . multiple–counts requiring separate verdicts.) This court rejects defendant's argument, in support of ground (b), that instruction 7 is erroneous in failing to take into consideration the fact that two counts were being submitted to the jury.

Defendant does not challenge the propriety of the use of instruction 7 with respect to Count I. Defendant's position is that instruction 7 should have been limited to Count I and should not have been used in connection with Count II.

Defendant says that because instruction 7 is not limited to Count I "it permits the jury to find defendant guilty of possession of a burglar's tool even if the jury believes that Hayes alone had possession of that burglar's tool." Defendant also argues that instruction 7 "allows the jury to find the defendant guilty of a completed offense, that of possession of a burglar's tool, if they believed that either he or Jerry Hayes attempted to have possession of that burglar's tool."

The instructions must be read together. Instruction 7 is not a verdict–director. Instruction 6 was the verdict–director on Count II and defendant has made no attack upon its sufficiency as to form. Instruction 6 required the jury to find, among other things, "that defendant had in his custody a jimmy," not merely that he, or Hayes, attempted to have such custody. Instruction 6 also told the jury: "However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense."

Defendant's fifth point has no merit.

The judgment is affirmed.

TITUS, GREENE and PREWITT, JJ., concur.